## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| WARREN SIMKIN, individually and on behalf of all others similarly situated, | ) ) ) | |
| *Plaintiff,* | ) ) | Case No. |
| v. | ) ) | Removal from: Superior Court of Fulton County, Georgia |
| MYDIGITAL OFFICE HOLDINGS, INC., and MYDIGITALOFFICE.COM, LLC d/b/a OTELIER, | ) ) ) ) | Case No. 25-cv-004386 |
| *Defendants.* | ) | |

## NOTICE OF REMOVAL

Defendants MyDigital Office Holdings, Inc. and MyDigitalOffice.com, LLC (collectively sometimes referred to as "Defendants") hereby file this Notice of Removal, in accordance with 28 U.S.C. §§ 1441, 1446, and 1453, to remove this action filed by Plaintiff Warren Simkin ("Plaintiff") from the Superior Court of Fulton County, Georgia, Case No. 25-cv-004386, to the United States District Court for the Northern District of Georgia, Atlanta Division. In support of removal, Defendants state as follows:

### NATURE OF REMOVED ACTION

1. On April 1, 2025, Plaintiff filed his Class Action Complaint against Defendants (the "State Court Action"). A true and correct copy of the Class

Action Complaint ("Complaint") in the State Court Action is attached hereto as <u>Exhibit A</u>.

2.      Plaintiff alleges that he brings "this class action against Defendants for their failure to properly secure and safeguard the personally identifiable information ("PII") of Plaintiff and other similarly situated customers of Defendants ("Class Members")." Compl., at ¶ 1. Plaintiff alleges that "sources say the data indeed included the personal information of hotel guests" and that it is "highly likely that the information breached included Plaintiff's and the proposed Class Members' PII, including their names, contact information, and financial information." Compl., at ¶¶ 3, 8.

3.      Plaintiff seeks to certify a class of "[a]ll individuals whose PII was compromised in the Data Breach ('Class')," which, according to the Complaint, "is believed to be in the millions." Compl., at ¶¶ 69, 72.

4.      Plaintiff purports to bring this suit because Defendants allegedly failed to "adopt reasonable measures to protect the PII of Plaintiff and Class Members" and instead implemented "ineffective and inadequate data security practices." Compl., at ¶¶ 23, 49. Plaintiff also alleges that Defendants "failed to comply with [] accepted standards" and as a result, the data incident occurred. Compl., at ¶ 48. Plaintiff alleges that he and the putative class members have suffered "actual injuries and damages, including (a) invasion of privacy; (b) loss of time and loss of productivity incurred mitigating the

materialized risk and imminent threat of identity theft risk; (c) the loss of benefit of the bargain (price premium damages); and (d) the continued risk to their PII, which remains in the possession of Defendants, and which is subject to further breaches[.]" Compl., at ¶ 49.

5.　To redress these purported harms, Plaintiff asserts claims against Defendants for negligence, negligence per se, unjust enrichment, invasion of privacy, and breach of contract under a third-party beneficiary theory. Compl., at ¶¶ 81-127. Plaintiff seeks damages and injunctive relief. Compl., at ¶¶ 81-127; Compl., at *Prayer for Relief*.

6.　A true and correct copy of the docket sheet for the State Court Action is attached hereto as Exhibit B.

7.　In accordance with 28 U.S.C. § 1446(a), all process, pleadings, and orders that have been filed and served in the Circuit Court Action are attached to this Notice, as Exhibits B1 through B7.

## TIMELINESS OF REMOVAL

8.　Defendant MyDigital Office Holdings, Inc. was served with the Summons and Complaint on April 9, 2025. A true and correct copy of the filed Affidavit of Service is attached hereto as Exhibit C. Counsel for Defendants accepted service on behalf of Defendant MyDigitalOffice.com, LLC on April 30, 2025. A true and correct copy of the Acknowledgment of Service is attached hereto as Exhibit D.

3

9.    This removal is timely because Defendants filed this removal within 30 days of being served with the Complaint. *See* 28 U.S.C. § 1446(b) (notice of removal shall be filed within 30 days of service of complaint); *Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 348 (1999) (time period for removal begins when defendant is served).

## PROPRIETY OF VENUE

10.    This Court is in the judicial district and division embracing the place where the state court case was initiated and is pending. Thus, this Court is the proper district court to which this case should be removed. 28 U.S.C. §§ 1441(a), 1446(a).

## GROUNDS FOR REMOVAL

11.    This is a civil action over which the Court has original subject matter jurisdiction under 28 U.S.C. §§ 1332 and 1441. Removal is proper under the Class Action Fairness Act of 2005 ("CAFA"), codified in pertinent part at 28 U.S.C. § 1332(d).

12.    **Basis of Original Jurisdiction.** This Court has original jurisdiction over this action under CAFA, codified at 28 U.S.C. § 1332(d). "Congress enacted [CAFA] to facilitate adjudication of certain class actions in federal court." *Anderson v. Wilco Life Ins. Co.*, 943 F.3d 917, 924-25 (11th Cir. 2019) (quoting *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 88 (2014)).

4

13.     Unlike traditional diversity jurisdiction, there is no presumption against removal under CAFA. *Id.*; *see also Dudley v. Eli Lilly & Co.*, 778 F.3d 909, 912 (11th Cir. 2014) (holding that "[a]pplying this binding precedent from the Supreme Court [in *Dart Cherokee*], we may no longer rely on any presumption in favor of remand in deciding CAFA jurisdictional questions"). In deciding whether removal is proper, "a court may rely on evidence put forward by the removing defendant, as well as reasonable inferences and deductions drawn from that evidence." *Anderson*, 943 F.3d at 924-25.

14.     Section 1332(d) provides that a district court shall have original jurisdiction over a class action with 100 or more putative class members in which the matter in controversy, in the aggregate, exceeds the sum or value of $5 million, and any member of the putative class is a citizen of a different state than that of the defendant. 28 U.S.C. § 1332(d)(1)-(2)(A); *Lowery v. Alabama Power Co.*, 483 F.3d 1184, 1194 (11th Cir. 2007).

15.     As set forth below, under 28 U.S.C. § 1332(d) and §1441(a), Defendants may remove the State Court Action to federal court under CAFA because: (1) this action is pled as a nationwide class action; (2) the putative nationwide class action includes more than 100 members; (3) at least "minimal diversity" exists, *i.e.*, members of the putative class are citizens of a state different than that of Defendant; and (4) the matter in controversy, in the

aggregate, exceeds the sum or value of $5 million, exclusive of interests in costs. *See Lowery*, 483 F.3d at 1194.

16.    **This Action is Pled as a Class Action.** CAFA defines a "class action" as "any civil action filed under rule 23 of the Federal Rule of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action." 28 U.S.C. § 1332(d)(1).

17.    Plaintiff brings this action as a "class action" and seeks certification under Georgia law in accordance with O.C.G.A. §§ 9-11-23(a)(1), (a)(2), (a)(3), (a)(4), (b)(3), and (c)(4). Compl., at ¶¶ 72-79. Because O.C.G.A. § 9-11-23 is a "similar State statute . . . authorizing an action be brought by 1 or more representative as a class action," the first CAFA element is satisfied. 28 U.S.C. § 1332(d)(1); *see Atlanta Impound, Inc. v. Attia*, No. A24A1394, 2025 WL 760904, at *2 n.4 (Ga. Ct. App. Mar. 11, 2025) (noting that O.C.G.A. § 9-11-23 is based on Federal Rule of Civil Procedure 23).

18.    **The Putative Class Includes At Least 100 Members.** Plaintiff purports to bring this action on behalf of himself and all others similarly situated, including "All individuals whose PII was compromised in the Data Breach ("Class")." Compl., at ¶ 69. Plaintiff asserts that "[t]he number of class members is believed to be **in the millions**." Compl., at ¶ 72 (emphasis added).

19.    Thus, the number of putative class members exceeds the statutorily required minimum of 100 individuals.

20.    **"Minimal Diversity" of Citizenship Exists.** Under 28 U.S.C. § 1332(d)(2)(A), "the district court shall have original jurisdiction" over a "class in which . . . any member of the class of plaintiffs is a citizen of a State different from any defendant." *See also Dart Cherokee*, 574 U.S. at 84-85.

21.    Defendants' Citizenship. Defendants are citizens of Delaware and Georgia for diversity purposes. Under 28 U.S.C. § 1332(c), "a corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business." As alleged in the Complaint, Defendant MyDigitalOffice Holdings, Inc. is a Delaware corporation with its principal place of business in Atlanta, Georgia, and is therefore a citizen of Delaware and Georgia for diversity purposes. *See* Compl., at ¶ 15. As alleged in the Complaint, Defendant MyDigitalOffice.com LLC is a Virginia limited liability company with a principal place of business in Atlanta, Georgia, and its sole member is Defendant MyDigitalOffice Holdings, Inc., which is a citizen of Delaware and Georgia. *See* Compl., at ¶¶ 15, 16. "When determining citizenship of the parties for diversity jurisdiction purposes, a limited liability company (LLC) is a citizen of every state that any member is a citizen of." *Purchasing Power, LLC v. Bluestem Brands, Inc.*, 851 F.3d 1218, 1220 (11th Cir. 2017). Therefore,

Defendant MyDigitalOffice.com LLC is also a citizen of Delaware and Georgia for diversity purposes.

22.    <u>Plaintiff's and Putative Class Members' Citizenship</u>. To be a "citizen" of a state, the individual must not only reside in that state, but he or she also must 'inten[d] to remain in that state.'" *Smith v. Marcus & Millichap, Inc.*, 991 F.3d 1145, 1157 (11th Cir. 2021). In other words, "[o]ne's domicile is 'the place of his true, fixed and permanent home and principal establishment and to which he has the intention of returning whenever he is absent therefrom.'" *Id.* at 1149 (citation omitted). "Courts look to various factors in determining a person's intent to remain in a state, including: the location of real and personal property, business ownership, employment records, the location of bank accounts, payment of taxes, voter registration, vehicle registration, driver's license, membership in local organizations, and sworn statements of intent." *Id.* (citations omitted).

23.    Plaintiff Simkin alleges that he is "a natural person and a resident of the State of Florida." Compl., at ¶ 14.

24.    As such, because Plaintiff Simkin and Defendants are citizens of different states, minimal diversity is met.

25.    Further, the putative class that Plaintiff seeks to represent is broad and expansive geographically. Plaintiff alleges that "Defendants jointly are a hotel management platform that service major chains and more than

10,000 hotels, including Marriot, Hilton, and Hyatt." Compl., at ¶ 2. Plaintiff also alleges that he and Class Members "provided their information to hotels, including Marriott and Hilton, as a condition of receiving hospitality services." Compl., at ¶ 121. Plaintiff further alleges that he provided his information to Defendants "as part of his travel and hotel stays with Marriott and Hilton" and that by virtue of the volume of "data stolen, it is virtually certain" that his information was implicated. Compl., at ¶¶ 63, 64.

26.     While "residency does not equate to citizenship," *Smith*, 991 F.3d at 1157, in this case, where only one putative class member must reside and intend to remain in a state different than Delaware or Georgia, it is more likely than not that many of the approximately "millions" of remaining putative class members are non-Delaware or non-Georgia citizens, especially given Plaintiff's allegations that the data incident involved "more than 10,000 hotels" to which putative class members traveled. *See, e.g.*, *Fuller v. Home Depot Servs., LLC*, No. CIV.A.1:07CV1268 RLV, 2007 WL 2345257, at *3 (N.D. Ga. Aug. 14, 2007) (nine putative class members with out-of-state driver's licenses and billing addresses was sufficient to show domicile outside of Georgia to satisfy minimal diversity under CAFA); *Brew v. Univ. Healthcare Sys., LC*, CV 15-4569, 2015 WL 8259583, at *3 (E.D. La. Dec. 9, 2015) (minimal diversity existed where members of the class definition had mailing addresses in seventeen different states).

27.    Accordingly, "minimal diversity" of citizenship exists for purposes of CAFA jurisdiction because Plaintiff Simkin and members of the proposed class are citizens of a state different than the states of citizenship of Defendants.

28.    **The Amount in Controversy Exceeds the CAFA Threshold.**[1] CAFA requires that a complaint put in controversy more than $5 million, exclusive of interest and costs. *See* 28 U.S.C. § 1332(d)(2). The claims of the individual class members are aggregated for purposes of CAFA's amount-in-controversy requirement. *See id.* § 1332(d)(6).

29.    Moreover, in the Eleventh Circuit, "[f]or amount in controversy purposes, the value of injunctive or declaratory relief is the 'value of the object of the litigation' measured from the plaintiff's perspective." *Morrison v. Allstate Indem. Co.*, 228 F.3d 1255, 1268 (11th Cir. 2000) (citation omitted). The court "aggregate[s] the claims of individual class members and consider[s] the monetary value that would flow to the entire class if … relief were granted." *S. Fla. Wellness, Inc. v. Allstate Ins. Co.*, 745 F.3d 1312, 1316 (11th Cir. 2014) (citing 28 U.S.C. § 1332(d)(6)).

---

[1] The amounts set forth in this Notice of Removal are solely for the purposes of establishing that the amount in controversy exceeds the $5 million threshold and are not intended and cannot be construed as an admission that Plaintiff can state a claim or is entitled to damages in any amount. Defendants deny liability, deny Plaintiff or the putative class members are entitled to recover any amount, and deny that a class can be properly certified in this matter.

30.    The United States Supreme Court has held that "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold" to meet the amount-in-controversy requirement. *Dart Cherokee*, 574 U.S. at 89; *accord Anderson*, 943 F.3d at 925.  "[U]nless recovery of an amount exceeding the jurisdictional minimum is legally impossible, the case belongs in federal court." *McDaniel v. Fifth Third Bank*, 568 F. App'x 729, 732 (11th Cir. 2014).

31.    Where a plaintiff does not plead a specific amount of damages, the removing defendant must establish by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional requirement. *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 752 (11th Cir. 2010).  In determining whether the amount-in-controversy requirement is satisfied, the Court may consider various pieces of evidence, including "facts alleged in the notice of removal, judicial admissions made by the plaintiffs, non-sworn letters submitted to the court, or other summary judgment type evidence." *Id.* at 754.

32.    "A court's analysis of the amount-in-controversy requirement focuses on how much is in controversy at the time of removal, not later." *Pretka*, 608 F.3d at 751.  Indeed, as the Eleventh Circuit has recognized, "'the plaintiffs' likelihood of success on the merits is largely irrelevant to the court's jurisdiction because the pertinent question is what is in controversy in the

case, not how much the plaintiffs are ultimately likely to recover.'" *Id.* (emphasis in original; citation omitted).

33.    Plaintiff brings this action on behalf of himself and putative class members for negligence, negligence per se, unjust enrichment, invasion of privacy, and third-party beneficiary. Compl., at ¶¶ 81-127. Plaintiff seeks damages and injunctive relief. Compl., at *Prayer for Relief*.

34.    The Complaint does not specify the amount of damages Plaintiff and the putative class members seek in this action. But the allegations in the Complaint demonstrate that the putative class members' claims, in the aggregate, exceed the sum or value of $5 million, exclusive of interests and costs. According to the Complaint, "[t]he number of class members is believed to be in the **millions**." Compl., at ¶ 72 (emphasis added). Even assuming a class of just one million, if Plaintiff alleges more than $5 in damages for each putative class member, the jurisdictional amount-in-controversy is satisfied. The allegations in the Complaint plainly meet this threshold. For example, Plaintiff alleges: "The retail cost of credit monitoring and identity theft monitoring can cost $200 or more *per year per Class Member*. . . . This is a future cost for *a minimum of seven years* that Plaintiff and Class Members would not need to bear but for Defendants' failure to safeguard their PII." Compl., at ¶ 62. By Plaintiff's allegations, and for a class size of just one

million, that cost would be $200 million per year, for a total of $1.4 billion just for this element of Plaintiff's and the putative class members claims.

35.    Plaintiff seeks damages for his and the putative class members' "lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach;" and "lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach[.]" Compl., at ¶ 97.

36.    Indeed, in data incident cases involving similar allegations and where the amount in controversy is not apparent from the face of the complaint, courts routinely hold that the costs of providing credit monitoring and identity theft protection services are properly included in the amount in controversy for purposes of CAFA's jurisdictional requirements.  *See, e.g., Porras v. Sprouts Farmers Mkt., LLC*, No. EDCV 16-1005 JGB (KKX), 2016 WL 4051265, at *1 (C.D. Cal. July 25, 2016) (denying motion to remand on the grounds that years of credit monitoring for thousands of class members was included in the amount in controversy and therefore exceeded the $5 million threshold); *McLoughlin v. People's United Bank, Inc.*, 586 F. Supp. 2d 70, 73 (D. Conn. 2008) (same); *Fielder v. Penn Station, Inc.*, No. 1:12- cv-2166, 2013 WL 1869618, at *5-7 (N.D. Ohio May 3, 2013) (same); *Caudle v. Towers, Perrin, Forster & Crosby, Inc.*, 580 F. Supp. 2d 273, 276-78 (S.D.N.Y. 2008) (same).

37.    Further, Plaintiff seeks injunctive and declaratory relief requiring unspecified changes to Defendants' cybersecurity practices, such as to require Defendants "to implement and maintain a comprehensive Information Security Program" and "to implement logging and monitoring programs sufficient to track traffic to and from Defendant's servers; and for a period of 7 years, appointing a qualified and independent third party assessor to conduct a SOC 2 Type 2 attestation on an annual basis."  Compl., at *Prayer for Relief*. These purported costs must also be considered in determining the amount-in-controversy.  *See Fastcase, Inc. v. Lawriter, LLC,* 907 F.3d 1335, 1344 (11th Cir. 2018) (stating the "immediate financial consequences of the litigation" may be considered in calculating the amount in controversy) (citation and emphasis omitted)*; Adams v. Am. Fam. Mut. Ins. Co.,* 981 F. Supp. 2d 837, 847-48 (S.D. Iowa 2013) ("[I]n assessing the jurisdictional amount in declaratory relief cases, the federal court should include in its assessment the value of all relief and benefits *that would logically flow* from the granting of the declaratory relief sought by the claimants.  For example, a declaration that a defendant's conduct is unlawful or fraudulent will carry certain consequences, such as the need to cease and desist from that conduct, that will often 'cost' the defendant in excess of $5,000,000.") (emphasis in original).

38.    Finally, Plaintiff seeks an award of damages on behalf of himself and the putative class for claims for negligence, negligence per se, invasion of

privacy, and third-party beneficiary.  Compl. ¶¶ 81-100, 108-127.  For these claims, they seek "damages" including "compensatory, nominal, and consequential damages."  Compl. at ¶¶ 99, 119, 127.  The potential to recover damages is also included within the amount-in-controversy.  These claims do not support or suggest the amount in economic or non-economic damages that Plaintiff seeks, especially given that Plaintiff does not allege he or anyone else in the class suffered fraud, attempted fraud, or theft as a result of the Data Incident.  However, based on the minimum compensatory damages for credit monitoring costs calculated above, potential actual and compensatory damages awarded to the class here could also exceed the CAFA amount-in-controversy minimum.  Combined with Plaintiff's other damages, Defendant can demonstrate by a preponderance of the evidence that the CAFA amount-in-controversy threshold has been met.  *See, e.g., Lanier v. Norfolk S. Corp.*, 256 F. App'x 629, 632 (4th Cir. 2007) (holding that "[o]nce the proponent of jurisdiction has set out the amount in controversy, only a 'legal certainty' that the judgment will be less forecloses federal jurisdiction") (quotation omitted); *see also, e.g., Thomas v. FIA Card Servs., Nat'l Assoc.*, No. 5:14-CV-79, 2014 WL 4954389, at *3 (N.D. W. Va. Oct. 2, 2014) (same; "The question is not what damages the plaintiff will recover, but what amount is 'in controversy' between the parties.") (quotation omitted); *Kates v. Chad Franklin Nat'l Auto Sales N. LLC*, No. 08–0384–CV–W–FJG, 2008 WL 3065009, *2 n.5 (W.D. Mo. July 30,

2008) ("The Court can easily imagine how $900,000 in actual damages, combined with punitive damages and attorney's fees, could exceed the jurisdictional threshold" of CAFA).

39.    Thus, because the case was pled was a class action, and because minimal diversity, class size, and the amount in controversy requirements of CAFA are satisfied, Defendant has properly removed the Circuit Court Action to this Court.

## EXCEPTIONS TO CAFA JURISDICTION DO NOT APPLY

40.    "Three enumerated exceptions to the exercise of CAFA jurisdiction exist[]: the 'local controversy' and 'home state controversy' are mandatory exceptions; whereas the 'interests of justice' exception is discretionary." *Brook v. UnitedHealth Group Inc.*, No. 06-cv-12954, 2007 WL 2827808, at *3 (S.D.N.Y. Sept. 27, 2007) (quoting 28 U.S.C. §§ 1332(d)(2)(4)(A)-(B)); *Hunter v. City of Montgomery, Alabama*, 859 F.3d 1329, 1334-37 (11th Cir. 2017).

41.    It is the party "seek[ing] to avail itself of an express statutory exception to federal jurisdiction granted under CAFA…[that] bears the burden of proof with regard to that exception." *Evans v. Walter Indus., Inc.*, 449 F.3d 1159, 1164 (11th Cir. 2006). "[O]nce the removing defendants have proved the amount in controversy and the minimal diversity requirement, and thus have established federal court jurisdiction under § 1332(d)(2)," *id.* at 1165, it is the "objecting party [that] bears the burden of proving an express statutory

16

exception," like the local-controversy, home-state, or discretion exception. *Id.* at 1164. *See also Life of the S. Ins. Co. v. Carzell*, 851 F.3d 1341, 1344 (11th Cir. 2017).

42. It is well-settled law that for either the mandatory local-controversy or the home-state exception to apply, two-thirds or more of the putative class and the primary defendant must be citizens of the state in which the action was filed. *See* 28 U.S.C. § 1332(d)(4)(B) & (C); *see also Whelan v. Wesley Apartment Homes, LLC*, 376 F.Supp. 3d 1312, 1319-1320 (N.D. Ga. 2019) (stating that CAFA's "home-state exception" applies where "two-thirds or more of the members of all proposed plaintiff classes in the aggregate, and the primary defendants, are citizens of the State in which the action was originally filed."); *Simring v. Greensky, LLC*, 29 F.4th 1262, 1267 (11th Cir. 2022) (stating that CAFA's "local controversy exception" applies where "greater than two-thirds of the members of all proposed plaintiff classes in the aggregate are citizens of the State in which the action was originally filed.") (citation omitted).

43. It is also well-settled law that "residency does not equate to citizenship." *Smith*, 991 F.3d at 1157. Instead, residency is merely one prong of the two-pronged test to prove citizenship. *Id.* (holding that to be a citizen of Florida, the person must "currently reside in Florida and have an intent to remain"). And the other prong—namely, the intent to remain—can only be

proved one of two ways. *Id*. at 1156 ("Class action plaintiffs can prove that two-thirds of the putative class are citizens of a certain state in two ways."). Citizenship can be established by "limit[ting] the class definition to citizens of a certain state," *id*., which Plaintiffs have not done here, (*see* Compl., at ¶ 69 (defining class). Or it can be established by "provid[ing] evidence of the class members' state of residence as well as evidence showing their intent to remain in that state." *Id*. at 1157. Although the type of evidence necessary to make such a showing varies, the Eleventh Circuit has provided examples of the "forms of evidence" that "relate directly to the parties asserting citizenship," including "property or business ownership, where the plaintiffs pay taxes and are registered to vote, and sworn statements of intent to remain." *Id*. Here, Plaintiff alleges that Defendants "service[s] major chains and more than 10,000 hotels, including Marriot, Hilton, and Hyatt." Compl., at ¶ 2. Obviously, these hotel chains and "more than 10,000 hotels" operate throughout the country.

44.    Importantly, "'there must ordinarily be at least some [specific] facts in evidence from which the district court may make findings regarding class members' citizenship for purposes of CAFA's local controversy exception.'" *Smith*, 991 F.3d at 1157 (quoting *Mondragon v. Capital One Auto Fin.*, 736 F.3d 880, 884 (9th Cir. 2013)). And the Eleventh Circuit has found mailing addresses to be insufficient to establish citizenship. *Id*. at 1158

(finding that just because "a person lives in a certain geographic area does not establish necessarily that the person is a citizen of that state," which is "particularly true for a state like Florida where citizens of other states may live part of the year in Florida . . . but maintain a permanent residence elsewhere"); *see Floyd v. City of Albany*, No. 1:10-CV-164 (WLS), 2011 WL 13244103, at *6 (M.D. Ga. Sept. 30, 2011) ("Various district courts in the 11th Circuit have held that proof of residence, such as mailing addresses or address records, without additional evidence, are insufficient to establish citizenship."); *In re Checking Acct. Overdraft Litig.*, 2012 WL 12877749, at *5 ("Federal courts may not engage in guesswork in order to decide whether the requisite elements of CAFA exceptions have been met.").

45.    Neither Defendants nor Plaintiff can demonstrate that CAFA's mandatory local controversy exception or home state exception applies here. With approximately millions of putative class members who traveled to hotel chains throughout the country, there simply is no way to know who is a citizen of which state, much less determine that two-thirds or more (of an unidentified class size in the millions) are citizens of Georgia, without speaking directly to each putative class member. *See Smith*, 991 F.3d at 1157 (holding that to prove "citizenship" for the purpose of the local controversy exception, the plaintiff "must provide evidence of the class members' state of residence as well as evidence showing their intent to remain in that state" and that "[m]ere mental

19

fixing of citizenship is not sufficient.  What is in another man's mind must be determined by what he does as well as by what he says").  This is especially true here, where "citizens of other states may live part of the year in [coastal Georgia or nearly Alabama] . . . , but maintain a permanent residence elsewhere."  *Id.* at 1158; *see Hart v. Rick's NY Cabaret Int'l, Inc.*, 967 F. Supp. 2d 955, 964 (S.D.N.Y. 2014) (stating that the key question is whether the class member "intended to make New York [their] permanent home").

46.    Thus, absent specific evidence relating to an individual's citizenship, the Court should "exercis[e] jurisdiction over the case."  *Smith*, 991 F.3d at 1159 (internal quotations omitted); *see also Simring*, 29 F.4th at 1267 (the local controversy exception "is a narrow one, with all doubts resolved 'in favor of exercising jurisdiction over the case.") (internal quotations omitted).  *Evans*, 449 F.3d at 1166 (finding that the court had "no way of knowing what percentage of the plaintiff class are Alabama citizens" and, therefore, concluding that "Plaintiffs have failed to prove that more than two-thirds of the plaintiff class are Alabama citizens").

47.    For the same reasons, the discretionary—sometimes referred to as the "interests of justice"—exception to CAFA jurisdiction does not apply here. The discretionary exception is codified under 28 U.S.C. § 1332(d)(3) and provides a district court with the discretion to decline jurisdiction where (1) "greater than one-third but less than two-thirds of the members of all proposed

plaintiff classes in the aggregate" and (2) "the primary defendants are citizens of the State in which the action was originally filed" among other factors.

48.    Just as the Court cannot find that greater than two-thirds of the putative class are citizens of Georgia without specific evidence of citizenship, it cannot find that greater than one-third of the putative class are Georgia citizens either.  *Smith,* 991 F.3d at 1161 (finding that because "the plaintiffs' evidence failed to prove the citizenship of any member of the class,"  that "same evidence failed to establish that greater than one-third of the class are Florida citizens for purposes of the discretionary exception"); *see also Preston v. Tenet Healthsystem Mem'l Med. Ctr., Inc.,* 485 F.3d 804, 812 (5th Cir. 2007) ("Despite the burden to prove a lesser percentage of class members were citizens of Louisiana, which party bears the burden of proof and the sufficiency of evidence necessary to satisfy the citizenship requirements remains consistent throughout either analysis.").

49.    Moreover, the discretionary exception to CAFA jurisdiction is just that: discretionary.  This exception allows courts the leeway to decline to exercise jurisdiction over cases that are "truly localized controversies" while, at the same time, authorizes courts to retain jurisdiction over cases that should be decided in and are rightfully before the federal court.  This case is clearly in the latter category.  Plaintiffs allege that Defendants provide services to "more than 10,000 hotels, including Marriot, Hilton, and Hyatt." Compl., at ¶ 2.

21

Plaintiffs seek to certify a class of "all individuals whose PII was compromised in the Data Breach," which "is believed to be in the **millions**." Compl, at ¶¶ 69, 72 (emphasis added). And Plaintiff seeks to enforce duties that vary from state to state to protect against criminal cybersecurity events that could originate from anywhere in the world. There are cases that involve "truly localized controversies." This case is not one of them. *See Preston*, 485 F.3d at 812 ("Congress crafted CAFA to exclude only a narrow category of truly localized controversies, and [the discretionary exception] provides a discretionary vehicle for district courts to ferret out the 'controversy that uniquely affects a particular locality to the exclusion of all others.'") (citation omitted). Thus, the discretionary exception does not apply here.

50.    In sum, none of the CAFA exceptions apply and the Court should retain jurisdiction over the case.

## NOTICE

51.    As required by 28 U.S.C. § 1446(d), Defendants are providing written notice of the filing of this Notice of Removal to Plaintiff and is filing a copy of this Notice of Removal with the clerk of the Superior Court of Fulton County, Georgia.

WHEREFORE, Defendants MyDigital Office Holdings, Inc. and MyDigitalOffice.com, LLC remove the State Court Action from the Superior

Court of Fulton County, Georgia to the United States District Court for the Northern District of Georgia.

Dated: May 8, 2025                    Respectfully submitted,

**BAKER & HOSTETLER LLP**

*/s/ John P. Hutchins*
John P. Hutchins
Georgia Bar No. 380692
1170 Peachtree Street NE, Suite 2400
Atlanta, Georgia 30309
Telephone: 404.459.0050
Facsimile: 404.459.5734
jhutchins@bakerlaw.com

*and*

Ambika B. Singhal*
Texas Bar No. 24132954
2850 North Harwood Street, Suite 1100
Dallas, Texas 75201
Telephone: 214.210.1200
Facsimile: 214.210.1201
asinghal@bakerlaw.com

*Attorneys for Defendants MyDigital Office Holdings, Inc. and MyDigitalOffice.com LLC*

*\*pro hac vice* forthcoming

23

## CERTIFICATE OF SERVICE

I hereby certify that on this 8th day of May, 2025, a true and correct copy of the foregoing was filed with the Court's CM/ECF filing system, giving notice to all counsel of record, and sent via email to:

Joseph B. Alonso
Daniel H. Wirth
ALONSO & WIRTH
1708 Peachtree Street, NW, Suite 303
Atlanta, GA 30309
jalonso@alonsowirth.com
dwirth@alonsowirth.com

J. Gerard Stranch, IV
Grayson Wells
Stranch, Jennings, & Garvey, PLLC
The Freedom Center
223 Rosa L. Parks Avenue, Suite 200
Nashville, TN 37203
gstranch@stranchlaw.com
gwells@stranchlaw.com

*/s/ John P. Hutchins*
John P. Hutchins