**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| WARREN SIMKIN, individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>MYDIGITAL OFFICE HOLDINGS, INC., and MYDIGITALOFFICE.COM, LLC d/b/a OTELIER,<br><br>*Defendants*. | ) | Case No. 1:25-CV-2548-SEG |

**DEFENDANTS MYDIGITAL OFFICE HOLDINGS, INC.'S AND MYDIGITALOFFICE.COM, LLC'S MOTION TO DISMISS <u>CLASS ACTION COMPLAINT AND BRIEF IN SUPPORT</u>**

Defendants MyDigital Office Holdings, Inc. ("MyDigital Office Holdings") and MyDigitalOffice.com, LLC d/b/a Otelier ("MyDigitalOffice.com," and collectively sometimes referred to as "Defendants" or "Otelier") hereby file this Motion to Dismiss Plaintiff's Class Action Complaint ("Complaint") (Doc. 1-2) pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). For the reasons set forth in the accompanying Brief in Support, Defendants respectfully request that the Court dismiss the Complaint in its entirety.

Dated: July 14, 2025

Respectfully submitted,

**BAKER & HOSTETLER LLP**

*<u>/s/ Georgia Bennett</u>*
Georgia Bennett
Georgia Bar No. 495910
1170 Peachtree Street NE, Suite 2400
Atlanta, Georgia 30309
Telephone: 404.459.0050
Facsimile: 404.459.5734
gbennett@bakerlaw.com

Lisa A. Houssiere*
Texas Bar No. 24056950
811 Main Street, Suite 1100
Houston, Texas 77002
Telephone: 713.751.1600
Facsimile: 713.751.1717
lhoussiere@bakerlaw.com

Ambika B. Singhal*
Texas Bar No. 24132954
2850 North Harwood Street, Suite 1100
Dallas, Texas 75201
Telephone: 214.210.1200
Facsimile: 214.210.1201
asinghal@bakerlaw.com

*Attorneys for Defendants MyDigital Office Holdings, Inc. and MyDigitalOffice.com LLC*

**admitted pro hac vice*

Defendants MyDigital Office Holdings, Inc. ("MyDigital Office Holdings") and MyDigitalOffice.com, LLC d/b/a Otelier ("MyDigitalOffice.com," and collectively sometimes referred to as "Defendants" or "Otelier") submit this Brief in Support of their Motion to Dismiss Plaintiff's Class Action Complaint ("Complaint") (Doc. 1-2). The Complaint fails to establish any injury in fact and fails to plausibly allege sufficient facts that, even when taken as true, would support Plaintiff's claims. Accordingly, Plaintiff's Complaint must be dismissed.

## I. <u>BACKGROUND AND PLAINTIFF'S ALLEGATIONS</u>

### A. The Alleged Data Incident

Otelier is a "hotel management platform that services major chains and more than 10,000 hotels, including Marriot [sic], Hilton, and Hyatt." Compl., ¶ 1. Indeed, Otelier is the most comprehensive data platform in the hospitality industry. Plaintiff relies solely on three articles published online in January 2025 for all his allegations regarding the alleged data breach of Otelier's systems ("Data Incident"). Compl., n. 1, 6, 8. The Complaint does not provide any information regarding the timing of the Data Incident, but the unauthenticated articles referenced in the Complaint claim that the Data Incident occurred between July and October 2024. Through its investigation, Otelier did not identify files implicated in the Data Incident containing personal information that would trigger a statutory notice obligation. Despite that, Plaintiff's lawsuit followed three months after the articles referenced in the Complaint were published online.

### B. Plaintiff's Allegations

On April 1, 2025, Plaintiff Warren Simkin filed his Complaint against Otelier in Fulton County Superior Court, which was timely removed to this Court on May 8, 2025.

Plaintiff alleges that he "provided his [personally identifiable information] to Defendants as part of his travel and hotel stays with Marriott and Hilton and those companies transferred his

data to Defendant." Compl., ¶ 63. Plaintiff admits that the personally identifiable information ("PII") that he provided was provided "to hotels, including Marriott and Hilton, as a condition of receiving hospitality services." *Id.*, ¶ 121.

Not knowing whether his PII was stolen, Plaintiff then assumes that "[g]iven the amount of data stolen, it is virtually certain that Plaintiff's PII was compromised." *Id.*, ¶ 64.

Plaintiff alleges that he brings "this class action against Defendants for their failure to properly secure and safeguard the personally identifiable information ("PII") of Plaintiff and other similarly situated customers of Defendants ("Class Members")." Compl., ¶ 1. Plaintiff alleges that "*other sources say* the data indeed included the personal information of *hotel guests*" and that it is "*highly likely* that the information breached included Plaintiff's and the proposed Class Members' PII, *including their names, contact information, and financial information*." *Id.*, ¶¶ 3, 8 (emphasis added).

Plaintiff purports to bring this suit because Defendants allegedly failed to "adopt reasonable measures to protect the PII of Plaintiff and Class Members" and instead implemented "ineffective and inadequate data security practices." *Id.*, ¶¶ 23, 49. Plaintiff also alleges that Defendants "failed to comply with [] accepted standards" and as a result, the data incident occurred. *Id.*, ¶ 48. Plaintiff alleges that he and the putative class members have suffered "actual injuries and damages, including (a) invasion of privacy; (b) loss of time and loss of productivity incurred mitigating the materialized risk and imminent threat of identity theft risk; (c) the loss of benefit of the bargain (price premium damages); and (d) the continued risk to their PII, which remains in the possession of Defendants, and which is subject to further breaches[.]" *Id.*, ¶ 49. To redress these purported harms, Plaintiff asserts claims against Defendants for negligence, negligence per se, unjust

enrichment in the alternative, invasion of privacy, and breach of contract under a third-party beneficiary theory. *Id.*, ¶¶ 81-127.

## II. LEGAL STANDARD

Federal courts have limited jurisdiction and must dismiss cases where subject matter jurisdiction is lacking. Fed. R. Civ. P. 12(b)(1). Where a plaintiff lacks Article III standing, there is no subject matter jurisdiction. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013). For Article III standing, a plaintiff must demonstrate that 1) he or she suffered an injury in fact that is concrete, particularized, and actual or imminent, 2) that the injury was caused by defendant, and 3) that the injury will likely be redressed by the requested relief. *Jones v. Family First Credit Union*, 340 F. Supp. 3d 1356, 1360 (N.D. Ga. 2018) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). In other words, a "plaintiff has standing only if he can 'allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 (2006).

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Facial plausibility" requires factual allegations "that allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. A court need not accept as true "threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Id.*

## III. ARGUMENT AND AUTHORITY

### A. Plaintiff Fails to Plausibly Allege a Cognizable Injury

To establish injury in fact, a plaintiff must show that he or she suffered "an invasion of a legally protected interest which is (a) concrete and particularized ***and*** (b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560-61 (emphasis added).

While "general factual allegations of injury" may be enough, (*id.*), "this does not mean that *any* allegations of injury can push a plaintiff across the standing threshold. Rather, a plaintiff must set forth general factual allegations that 'plausibly and clearly allege a concrete injury,' and that injury must be 'actual or imminent, not conjectural or hypothetical." *Tsao v. Captiva MVP Restaurant Partners, LLC*, 986 F.3d 1332, 1337-38 (11th Cir. 2021) (cleaned up). "A concrete injury must be *de facto*; that is, it must actually exist." *Spokeo Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016). Rather than properly pleading injury in fact, Plaintiff asserts only "scattered descriptions of generalized harms" including, "[a] list of horribles" that have befallen or may befall the putative class. *Hochendoner v. Genzyme Corp.*, 823 F.3d 724, 732-33 (1st Cir. 2016).

The Court should not "conflate Article III's requirement of injury in fact with [the Plaintiffs'] potential causes of action, for the concepts are not coextensive." *Debernardis v. IQ Formulations, LLC*, 942 F.3d 1076, 1084 (11th Cir. 2019); *accord Krottner v. Starbucks Corp.*, 406 F. App'x 129, 131 (9th Cir. 2010) ("[O]ur holding that [p]laintiffs[ ] pled an injury-in-fact for purposes of Article III standing does not establish that they adequately pled damages for purposes of their state-law claims."). Significantly, "the standard for alleging actual damages is generally higher than that for plausibly alleging injury-in-fact." *Attias v. CareFirst, Inc.*, 365 F. Supp. 3d 1, 13 (D.D.C. Jan. 30, 2019).

Instructive on this issue is the Northern District of Georgia's decision in the analogous case of *Everhart v. Colonial Pipeline Co*. No. 1:21-cv-3559-MHC, 2022 WL 3699967 (N.D. Ga. July 22, 2022). As in this case, the plaintiffs in *Colonial Pipeline* alleged that they were required to

provide their sensitive PII to the defendant in the course of their relationship with the defendant, that the defendant suffered a data breach in which "perpetrators exfiltrated or stole voluminous data," including the plaintiffs' sensitive PII. And also like in this case, plaintiffs asserted nearly identical theoretical and speculative injuries to those the Plaintiff advances here, which the Court rejected and dismissed the case in its entirety.[1] This Court should follow the same rationale and reject the Plaintiff's speculative injuries.[2]

**B. Plaintiff's Reliance on His Damage Theories to Establish Article III Standing Fails**

Having no real injury to allege, Plaintiff turns to his damage theories in an attempt to establish Article III standing. As this Court has previously found, such theories are unsuccessful. *See Bland*, 2024 WL 3313348, at *4.

**i. Invasion of Privacy**

In addition to asserting a claim for invasion of privacy, Plaintiff pleads invasion of privacy as a theory of damages. Compl., ¶49. In Georgia, there are four disparate torts under the common name of invasion of privacy: (1) intrusion upon the plaintiff's seclusion or solitude; (2) public disclosure of embarrassing private facts about the plaintiff; (3) publicity which places the plaintiff in a false light in the public eye; and (4) appropriation of the plaintiff's name or likeness. *See Purvis v. Aveanna Healthcare, LLC*, 563 F. Supp. 3d 1360, 1377 (N.D. Ga. Sept. 27, 2021) (quoting *Dept. of Labor v. McConnell*, 828 S.E. 2d 352, 359 (Ga. 2019)). But Plaintiff, at best, attempts to

[1] *Compare* Compl. ¶ 49 *with Colonial Pipeline Co*., 2022 WL 3699967, at *2 (addressing alleged injuries based on "(i) lost or diminished value of PII, (ii) out-of-pocket expenses associated with the prevention, detection, or recovery from identity theft, tax fraud, and/or unauthorized use of their PII; (iii) lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach, not limited to lost time, and (iv) the continued and certainly increased risk to their PII, which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) may remain backed up in Defendant's possession and subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect their PII.").

[2] *See also Bland v. Urology of Greater Atlanta, LLC*, 2024 WL 3313348 at *4 (N.D. Ga. 2024) (holding plaintiff failed to establish a plausible injury in fact for the following injury theories (1) an increased risk of future identity theft, (2) costs incurred to mitigate that risk, (3) overpayment for Defendant's medical services, (4) breach of an implied contract for data security, (5) a reduction in the value of his PII/PHI, and (6) an invasion of his privacy).

plead public disclosure of embarrassing private facts about himself, but fails to identify what "facts" Plaintiffs disclosed to the public that are embarrassing. *See infra*, Section III.C.4. Simply put, Plaintiff's injury theory based on an invasion of privacy never fits cases like this which involve third-party cyberattacks against a defendant.[3]

**ii. Plaintiff's Risk of Identity Theft and Future Cost of Credit and Identity Theft Monitoring**

Plaintiff alleges that he and Class Members are "at a heightened risk of identity theft for years to come" (Compl., ¶ 50) and claims that his information "has already or will end up for sale on the dark web because that is the *modus operandi* of hackers" and because such information is "usually at least sold" on certain sites. *Id.*, ¶ 51. Such allegations, however, are a far cry from being imminent or concrete.

The United States Supreme Court has held that it is not enough that a future injury *might* come to pass, or even that it is objectively reasonably likely to happen. In *TransUnion LLC v. Ramirez*, the plaintiffs alleged violations of the Fair Credit Reporting Act and tried to establish standing based on an alleged fear of future harm—specifically, that credit reports containing inaccurate personal information may at some point be distributed to a third party at some unknown time in the future. 141 S. Ct. 2190, 2210 (2021). The Supreme Court rejected this contention, stating succinctly: "[n]o concrete harm, no standing." *Id.* at 2200.

Following suit, other courts—including this one—also reject this theory. "Plaintiffs' conclusory allegations of hypothetical and speculative future harm based on an alleged increased

---

[3] *See Purvis*, 563 F. Supp. 3d at 357; *see generally*, *Cumberland Contractors, Inc. v. State Bank and Trust Co.*, 755 S.E. 2d 511 (Ga. App. 2014) (holding that public dissemination of information such as Social Security numbers does not constitute an invasion of privacy). Strangely, Plaintiff in his claim for invasion of privacy (Count III) refers to the disclosure of protected health information, but such a factual allegation is not made anywhere else in the Complaint, nor would it make any sense for a hotel to request and receive protected health information from a guest making a hotel reservation.

of identity theft fail to allege a cognizable injury." *Colonial Pipeline Co.*, 2022 WL 3699967, at *2. *See also*, *Logan v. Marker Group, Inc.*, No. 4:22-cv-00174, 2024 WL 3489208, at *6 ("Two courts in [the Fifth] Circuit have directly examined 'whether the heightened risk of future identity theft/fraud posted by a data security breach confers Article III standing on persons whose information may have been accessed,' and both found 'the answer is no.'"); *Pisciotta v. Old Nat. Bancorp*, 499 F.3d 629, 634-35 (7th Cir. 2007) (holding that the alleged "harm caused by identity information exposure, coupled with the attendant costs to guard against identity theft" insufficient to state negligence claim). "[T]he mere risk of future harm, standing alone, cannot qualify as a concrete harm." *TransUnion*, 141 S. Ct. at 2210-11.

Plaintiff also alleges that he became aware of two fraudulent charges on his accounts, but he fails to plead necessary facts to tie these alleged occurrences to the Data Incident. Plaintiff does not claim that these fraudulent charges happened *after* the Data Incident, much less identify the timing of the Data Incident.

**iii. Loss of Time**

Plaintiff alleges that he and Class Members "have spent, and will spend additional time in the future" on mitigating any purported repercussions from the Data Incident. Compl., ¶ 57. Plaintiff further alleges that he "has spent time going through his account statements and credit history to identify malicious activity" and that "his time and effort" was required "to set things straight" after he identified two fraudulent charges. *Id.*, ¶ 65-66. The Eleventh Circuit Court of Appeals and other courts routinely reject this theory in data breach actions and find that such a theory does not constitute an injury in fact for Article III standing. Indeed, "[w]here a hypothetical future harm is not certainly impending, plaintiffs cannot manufacture standing merely by inflicting harm on themselves." *Tsao*, 986 F.3d at 1338 (citing *Muransky v. Godiva Chocolatier, Inc.*, 979

F.3d 917, 931 (11th Cir. 2020); *see also Rand v. Travelers Indem. Co.*, 637 F. Supp. 3d 55, 65 (S.D.N.Y. 2022) (". . . the time they spent protecting themselves against this speculative threat cannot create an injury."). "The majority view is that 'general allegations of lost time,' . . . are not cognizable injuries." *Griffey v. Magellan Health, Inc.*, No. CV-20-01282, 2021 WL 4427065, at *4 (D. Ariz. Sept. 27, 2021) (citing *Pruchniki v. Envision Healthcare Corp.*, 439 F. Supp. 3d 1226, 1232-33 (D. Nev. 2020), *aff'd* 845 F. App'x 613 (9th Cir. 2021).

Such loss of time costs are too speculative to constitute a cognizable injury. *See, e.g.*, *Pruchnicki*, 493 F. Supp. 3d at 1233 ("[T]he court finds that tangible, out-of-pocket expenses are required in order for lost time spent monitoring credit to be cognizable as damages."); *Corona v. Sony Pictures Ent., Inc.*, 2015 WL 3916744, at *4 (C.D. Cal. June 15, 2015) ("[G]eneral allegations of lost time are too speculative to constitute cognizable injury.").

**iv. Loss of Benefit of the Bargain**

Plaintiff contends that he suffered an injury in the form of the loss of his benefit of the bargain, calling these "price premium damages." Compl., ¶ 49. Plaintiff claims that "Plaintiff and the Class Members would not have provided their PII, nor paid Defendant, had they known Defendants would not adequately protect their PII."[4] *Id.*, ¶ 106. Notably, Plaintiff stops short of stating that he would not have traveled or stayed in hotels. Based on the failure to provide any detail, the Court should reject this theory based on the *Twombly* factors alone.

A sister court in the Eleventh Circuit rejected the "benefit of the bargain" theory as follows: "The Plaintiffs' claim that they suffered money damages because they paid for services at [defendant dental center] but would not have done so had they known that [defendant] would get hacked later on, is pure applesauce." *Blahous v. Sarrell Reg'l Dental Ctr. for Pub. Health, Inc.*,

[4] Of course, no reasonable inference can be taken from the Complaint that Plaintiff paid Otelier or was a customer of Otelier, which Plaintiff admits is an online platform that services hotel chains. Compl., ¶ 1.

No. 2:19-cv-798, 2020 WL 4016246, at *7, n.11 (M.D. Ala. July 16, 2020) (standing context). Not surprisingly, courts across the country have rejected this overpayment or "benefit of the bargain" theory, and the Court here should reject it as well. *See, e.g.*, *In re 21st Century Oncology Customer Data Sec. Breach Litig.*, 380 F. Supp. 3d, 1243, 1257 (M.D. Fla. 2019); *In re Cmty. Health Sys.*, No. 15-cv-222, 2016 WL 4732630, at *7-8 (N.D. Ala. Sept. 12, 2016); *Keim v. S. Fl. Fair and Palm Beach Cnty. Expositions, Inc.*, 535 F. Supp. 3d 1273, 1279 n.4 (S.D. Fla. 2021); *see also Carlsen v. Gamestop, Inc.*, 112 F. Supp. 3d 855, 861 (D. Minn. 2015) ("[c]ourts have generally found 'overpayment' theories insufficient to establish injury"); *Dieffenbach v. Barnes & Noble, Inc.*, 887 F.3d 826, 829 (7th Cir. 2018) (failure to secure plaintiff's PII is not a benefit of the bargain "loss").

### C. Plaintiff's Complaint Should Be Dismissed Because Plaintiff Fails to State Any Claim Upon Which Relief Can Be Granted

Even if Plaintiff could establish Article III standing to assert his claims against Otelier, his claims still fail because Plaintiff does not state any claim upon which relief can be granted.

#### 1. Plaintiff Fails to State a Claim for Negligence and Negligence *Per Se*

##### a. Plaintiff Fails to Plead Proximate Causation

Plaintiff does not plead a causal connection between the Defendants' alleged conduct and the Plaintiff's injury, which is fatal to Plaintiff's negligence claim. *See Edwards v. Campbell*, 338 Ga. App. 876, 880 (2016). Under Georgia law, "the inquiry is whether the causal connection between the defendant's conduct and the injury is too remote for the law to countenance a recovery." *Thomas v. Food Lion, LLC*, 256 Ga. App. 880, 883 (2002). Speculative and conclusory allegations cannot substitute for plausible factual allegations.[5]

---

[5] *See, e.g. Baker v. Akumin Corp.*, No. 0:23-cv-62396, 2024 WL 1931480, at *4 (S.D. Fla. Apr. 16, 2024) (rejecting as insufficient allegations that "there is a strong probability that entire batches of stolen information have been placed, or will be placed, on the black market/dark web for sale and purchase by criminals intending to utilize the Private

For instance, any attempt to speculate based on coincidental timing and dependent on highly attenuated chains of events does not constitute a plausible allegation that Otelier proximately caused any of Plaintiff's "damages." *See Arnold v. Turbow*, 357 Ga. App. 533, 538 (2020); *In re Cmty. Health Sys., Inc.*, No. 15-cv-222, 2016 WL 4732630, 2016 WL 4732630, at *25 (N.D. Ala. Sept. 12, 2016). And yet, Plaintiff does not even allege when the Data Incident occurred or when the two purported fraudulent charges he found occurred. Even accepting a silent inference that such charges occurred after the Data Incident, this is merely temporal coincidence.

Moreover, speculation based on probability is equally unsupportive. Here, Plaintiff alleges that it is "highly likely that the information breached included Plaintiff's and the proposed Class Members' PII" (Compl., ¶ 3) and that "[g]iven the amount of data stolen, it is virtually certain that Plaintiff's PII was compromised". *Id.*, ¶ 64. But Plaintiff pleads nothing about the alleged fraudulent charges he claims he experienced to tie them to this Data Incident, stating merely that "Plaintiff has identified two fraudulent charges on his accounts in the last month that required his time and effort to set things straight." *Id.*, ¶ 66.

Setting aside Plaintiff's failure to plead any compensable harm, Plaintiff fails to rule out other likely sources of his alleged harm, which further exposes his failure to plead proximate cause. *See Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1324- 27 (11th Cir. 2012) (sustaining standing for only those plaintiffs who alleged actual misuse of their personal information and ruled out other plausible causes of the alleged misuse). By way of example, Plaintiff specifically refers to the following: "the substantial increase in cyber-attacks and/or data breaches targeting institutions that collect and store PII" (Compl., ¶ 26), "[d]ata thieves regularly target institutions" (*id.*, ¶ 27), "[i]n

Information for identity theft crimes."); *DiPierro v. Fla. Health Sciences Ctr., Inc.*, 737 F. Supp. 3d 1314, 1334 (M.D. Fla. 2024) ("Plaintiffs' conclusory allegation that they believe their information has been or will be sold because that is the nature of things is speculative.").

2021, a record 1,862 data breaches occurred, resulting in approximately 293,927,708 sensitive records being exposed, a 68% increase from 2020" (*id.*, ¶ 28), and "the prevalence of public announcements of data breach" (*id.*, ¶ 30). Significantly, Plaintiff does not—nor can he likely—plead that he has never received notice that another data incident impacted his information before this Data Incident or that Otelier was "the only place [his PII and PHI] were available." *Blood v. Labette Ct. Med. Ctr.*, 2022 WL 11745549, at *8 (D. Kan. Oct. 20, 2022). And even Plaintiff admits that an unauthorized third party hacked Otelier, meaning Otelier did not cause the Data Incident.[6]

Absent substantive allegations, such speculative and conclusory ones are insufficient to state claims for negligence. "[W]hen a complaint omits facts that, if they existed, would clearly dominate the case, it seems fair to assume that those facts do not exist." *O'Brien v. DiGrazia*, 544 F.2d 543, 546 n.3 (1st Cir. 1976).

**b. Plaintiff's Negligence Claims Are Not Based on a Legal Duty**

"[T]he threshold issue in a negligence action is whether and to what extent the defendant owes a legal duty to the plaintiff." *Dutt v. Mannar & Co., LLC*, 354 Ga. App. 565, 566 (2020). "In the absence of a legally cognizable duty, there can be no fault or negligence." *Id.* Whether such a duty exists is a question of law, *see id.*, and "[a] motion to dismiss should be granted when a plaintiff fails to allege any cognizable statutory or common law duty." *Health v. ILG Techs., LLC*, No. 1:20-cv-3130, 2020 WL 6889164, at *10 (N.D. Ga. Nov. 24, 2020). Plaintiff cannot plausibly plead a common law or statutory duty of Otelier to guarantee the security of his data and prevent cyberattacks. Generally, Plaintiff alleges that Otelier had a duty "to secure and to prevent

[6] *See also Goldstein, Garber & Salama, LLC v. J.B.*, 300 Ga. 840, 841 (2017) ("[T]he rule is that an intervening and independent wrongful act of at third person producing the injury, and without which it would not have occurred, should be treated as the proximate cause, insulating and excluding the negligence of the defendant.") (citation omitted).

disclosure of the information, and to safeguard the information from theft." Compl., ¶ 84. Plaintiff then vaguely alleges that "Defendants breached their duties, pursuant to the FTC Act, and other applicable standards, and thus was negligent". Compl., ¶ 91. Not so.

Georgia law does not recognize, at common law or by statute, a duty "to all the world not to subject others to an unreasonable risk of harm." *Ga. Dep't of Labor v. McConnell*, 305 Ga. 812, 815-16, 828 S.E.2d 352, ("*McConnell II*"). The Georgia Supreme Court reached this conclusion in *McConnell II* in the context of an alleged failure to safeguard sensitive personal data. *Id*. Importantly, *McConnell II* is still the law and was not changed by the Georgia Supreme Court's subsequent decision in *Collins v. Athens Orthopedic Clinic, P.A.*, 307 Ga. 555 (2019). The *Collins* decision focused on what a plaintiff must plead "to show a legally cognizable injury under Georgia tort law" and did not revisit the question of duty. *Id.* at 555.

Importantly, Georgia law does not recognize a common law duty to safeguard data. *See, e.g.*, *McConnell II*, 305 Ga. at 816 (finding no common law or statutory duty to safeguard data); *Baker v. G4S Secure Solutions (USA) Inc.*, 2020 WL 5096520, at *5 (S.D. Ga. Aug. 28, 2020) ("[U]nder *McConnell*, G4S did not have a duty to protect Plaintiffs' information against negligent disclosure.").

Lacking a common law duty to support his tort claims, Plaintiff tries to import a duty from the Federal Trade Commission Act, 15 U.S.C. § 45 (the "FTC Act") to support his negligence *per se* claim. Compl., ¶¶ 34-43, "[N]egligence per se arises when a statute is violated, the person injured by the violation is within the class of persons the statute was intended to protect, and the harm complained of was the harm the statute was intended to guard against." *Goldstein, Garber & Salama, LLC v. J.B.*, 300 Ga. 840, 844-45 (2017). Courts—including this one—have flatly rejected the use the FTC Act as a basis for a negligence *per se* claim because the statute does not

confer a private right of action. "It is well-settled, however, that there is no private right of action under the FTC Act." *Muhammad v. Flagship Credit Acceptance, LLC*, 2021 WL 9275369, *4 (citing *Smith v. JP Morgan Chase*, 837 F. App'x 769 (11th Cir. 2021)); *see also In re Brinker Data Incident Litig*, 3:18-cv-686, 2020 WL 691848, at *9 (M.D. Fla. Jan. 27, 2020) ("violation of the FTC Act cannot be the basis for a negligence per se claim"). The same result should hold here. "Plaintiff cannot manipulate the common law to state a private, statutory cause of action where none exists." *Brush v. Miami Beach HealthCare Group Ltd.*, 238 F. Supp. 3d 1359, 1367 (S.D. Fla. 2017). As such, Plaintiff also fails to allege a cognizable duty to support his negligence claims.

**2. Plaintiff's Claim for Negligence and Negligence Per Se Are Barred by the Economic Loss Doctrine.**

Even if a legal duty exists (it does not), Plaintiff's negligence claim is barred by Georgia's economic loss rule, which bars "recovery in all negligence-based tort actions where a plaintiff seeks to recover purely economic losses, regardless of contractual privity." *Murray v. ILG Techs., LLC*, 798 F. App'x 486 490 (11th Cir. 2020); *accord Heath v. ILG Techs., LLC*, No. 1:20-CV-3130, 2020 WL 6889164, at *11 (N.D. Ga. Nov. 24, 2020). Here, Plaintiff seeks to recover purely economic losses under each of his claims except for invasion of privacy (which, as discussed below, also fails). *See, generally*, Compl. As such, the economic loss rule bars Plaintiffs' tort claims because Plaintiff does not (and cannot) plausibly allege economic damages flowing from an independent duty, as explained above, or a special relationship with Otelier. *See, e.g., Wallace v. Wells Fargo Bank, N.A.*, No. 1:15-CV-1418-WSD-WEJ, 2015 WL 13736631, at *7 (N.D. Ga. Aug. 20, 2015) (finding no special relationship between property owners and note issuing bank). Nor does he (or could he) allege property damage from the Data Incident. "Electronic data can have value and the value can be lost . . . [but] the loss here is not a result of physical destruction of property" and, therefore, is purely economic. *In re TJX Cos. Retail Sec. Breach Litig.*, 564 F.3d

489, 498 (1st Cir. 2009), *as amended on reh'g in part* (May 5, 2009) (affirming dismissal of negligence based on economic loss rule).[7]

**3. Plaintiff Fails to State a Claim for Unjust Enrichment in the Alternative**

Plaintiff purports to bring a claim against Otelier for unjust enrichment, in the alternative. Compl. ¶¶ 101-107. "Unjust enrichment is an equitable concept and applies when as a matter of fact there is no legal contract, but when the party sought to be charged has been conferred a benefit by the party contending an unjust enrichment which the benefitted party equitably ought to return or compensate for." *Wachovia Ins. Servs., Inc. v. Fallon*, 299 Ga. App. 440, 449 (2009); *see Sitterli v. Csachi*, 344 Ga. App. 671, 674-75 (2018).

Here, Plaintiff fails to sufficiently allege what monetary benefit was conferred and unjustly retained by *Otelier*. Even more attenuated than the usual data breach action, there is an intermediary between Plaintiff and Otelier. Indeed, Plaintiff does not—and cannot—allege that he paid monies to Otelier, because he did not. Plaintiff alleges that he "provided his PII to Defendants as part of his travel and hotel stays with Marriott and Hilton and those companies transferred his data to Defendant." Compl., ¶ 63. In an attempt to muddy the waters, Plaintiff further alleges that "Plaintiff and Class Members conferred a benefit upon Defendants in the form of PII provided to Defendant, along with payment, as a condition of their hotel stays." *Id.*, ¶ 103. But Otelier is not a hotel (as admitted by Plaintiff)[8] and was not the recipient of "payment, as a condition of their hotel stays." *Id.* Such an allegation is limited to Marriott and Hilton—the hotel chains in which Plaintiff alleges he stayed. *Id.*, ¶ 63. Plaintiff alleges that "Defendants appreciated or had knowledge of the

---

[7] *See also Silverpop Sys. v. Leading Mkt. Techs., Inc.*, 641 F. App'x 849, 853 (11th Cir. 2016); *Willingham v. Glob. Payments, Inc.*, No. 1:12-CV-01157, 2013 WL 440702, at *18 (N.D. Ga. Feb. 5, 2013) (economic loss rule barred negligence based on data breach not resulting in personal injury or property damage).

[8] Plaintiff states: "Defendants jointly are a hotel management platform that services major chains and more than 10,000 hotels, including Marriot [sic], Hilton, and Hyatt." Compl., ¶ 2.

benefits conferred upon them by Plaintiff and Class Members." *Id.*, ¶ 104. Plaintiff then claims that "Defendants should not be permitted to retain the full value of Plaintiff's and the proposed Class Members' monies paid and their PII because Defendants failed to adequately protect their PII." *Id.*, ¶ 106. Plaintiff continues: "Plaintiff and the Class Members would not have provided their PII, nor paid Defendant, had they known Defendants would not adequately protect their PII." *Id.*, ¶ 107. In sum, Plaintiff contends that Otelier cannot retain "the full value" of his PII or unspecified monies paid. *Id.* ¶ 106.

The only plausible inference in the Complaint is that Plaintiff paid Marriott and Hilton to stay at Marriott and Hilton hotels. Plaintiff does not sufficiently allege that he or the proposed Class Members paid monies to Otelier and instead makes conclusory allegations that they paid such monies. Even if he had, it still would be insufficient. Plaintiff paid for a hotel room and got what he paid for. *Cf. Irwin v. Jimmy John's Franchise, LLC*, 175 F. Supp. 3d 1064, 1072 (C.D. Ill. 2016) ("Irwin paid for food products. She did not pay for a side order of data security and protection; it was merely incident to her food purchase, as is the ability to sit at a table to eat her food, or to use Jimmy John's restroom.").

Ultimately, Plaintiff's claim contains only conclusory allegations and a mere "recital of elements" that cannot survive this Motion. *Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

**4. Plaintiff Fails to State a Claim for Invasion of Privacy**

Plaintiff alleges that "[t]he unauthorized release of PII, especially Social Security numbers and protected health information, is highly offensive to any reasonable person," "Plaintiff's and Class Members' PII is not of legitimate concern to the public," "Defendants knew or should have known that Plaintiff's and Class Members' PII was private," "Defendants publicized Plaintiff's

and Class Members' PII, by communicating it to cybercriminals" and that "[i]t is therefore highly likely that the Plaintiff's and the Class Members' PII is rapidly becoming public knowledge—among the community writ [sic] large". Compl., ¶¶ 113-117. Plaintiff, however, does not even make sufficient factual allegations regarding *what* PII was involved in the Data Incident, stating only that it is "highly likely that the information breached included Plaintiff's and the proposed Class Members' PII, including their **names, contact information, and financial information**." *Id.*, ¶ 3 (emphasis added). In other words, Plaintiff alleges the PII includes "information . . . required to make reservations" at hotels. *Id.* Plaintiff alleges that despite Otelier's representation that no sensitive PII was taken, "other sources say the data included the personal information of hotel guests." *Id.*, ¶ 8. But Plaintiff does not (and cannot) specify what is included in this PII. By the time Plaintiff makes it to his invasion of privacy claim, he refers to "Social Security numbers" and "protected health information." *Id.*, ¶ 113. But the dissemination of Social Security numbers does not constitute an invasion of privacy under Georgia law. *See, e.g.*, *Cumberland Contractors*, 755 S.E.2d 511. Nor does Plaintiff allege any disclosure of protected health information, or explain why such information would be required for a hotel reservation. There is certainly nothing embarrassing about the "names, contact information, and financial information" used to make a hotel reservation. Compl., ¶ 3.

Plaintiff states that the PII purportedly at issue "was not known to the public prior to the [Data Incident]," refers to the publication of the PII to cybercriminals, and claims that it is "highly likely" that the PII is "rapidly becoming public knowledge" *Id.*, ¶ 110. Accordingly, Plaintiff's invasion of privacy claim appears to be based on the public disclosure of embarrassing private facts about plaintiff. Three elements are required to satisfy Plaintiff's theory of invasion of privacy based on public disclosure of embarrassing private facts: "(a) the disclosure of private facts must

be a public disclosure; (b) the facts disclosed to the public must be private, secluded or secret facts and not public ones; and (c) the matter made public must be offensive and objectionable to a reasonable man of ordinary sensibilities under the circumstances." *McConnell II*, 305 Ga. at 817 (quoting *Cotrell v. Smith*, 299 Ga. 517, 532, 788 S.E.2d 772 (2016)). "The interest protected is that of reputation, with the same overtones of mental distress that are present in libel and slander. It is in reality an extension of defamation into the field of publications that do not fall within the narrow limits of the old torts, with the elimination of the defense of truth." *Id.* (quoting *Cottrell*, 299 Ga. at 532).

In *McConnell II*, the Supreme Court of Georgia held that the kind of information disclosed—names, social security numbers, home telephone numbers, e-mail addresses, and ages—is not of the type to affect a person's reputation, "which is the interest the tort of public disclosure of embarrassing private facts was meant to remedy." 305 Ga. at 818-19. Assuming that Plaintiff has even identified specific PII, the kind he claims could have been taken—personal information used to make hotel reservations—is of the exact same type as in *McConnell II*. Plaintiff does not allege what is so embarrassing about names, e-mail addresses, addresses, phone numbers, or payment information because he cannot. Nor would the disclosure of this type of information be offensive or objectionable. *See, e.g.*, *Baker v. G4S Secure Solutions (USA) Inc.*, 2020 WL 5096520 (S.D. Ga. Aug. 28, 2020) (finding no claim stated for invasion of privacy under this theory, even if it had not granted motion to dismiss for lack of standing); *Dortch v. Atlanta Journal*, 261 Ga. 350, 352, 405 S.E.2d 43 (1991) (holding that unlisted telephone numbers were not offensive and objectionable); *Cumberland Contractors & Atlanta Constitution v. State Bank & Trust Co.*, 327 Ga. App. 121, 126, 755 S.E.2d 511 (2014) (holding that social security numbers were not embarrassing private facts). Accordingly, Plaintiff has failed to state a claim for invasion

of privacy based on public disclosure of embarrassing private facts. Plaintiff also does not state a claim for invasion of privacy based on publicity which places Plaintiff in a false light in the public eye for the same reasons.

To the extent that Plaintiff is proceeding on an intrusion upon seclusion theory, he also fails to state a claim. A claim for intrusion upon seclusion "fundamentally 'involves a prying or intrusion, which would be offensive or objectionable to a reasonable person, into a person's private concerns.'" *Purvis*, 563 F. Supp. 3d at 1377 (citing *Yarbray v. S. Bell Tel. & Tel. Co.*, 261 Ga. 703, 409 S.E.2d 835, 837 (1991)). Like in *Purvis*, here, "the central narrative of Plaintiffs' factual allegations is that Defendant failed to take sufficient precautions to prevent this intrusion" and not "a physical intrusion which is analogous to a trespass". *Purvis*, 563 F. Supp. 3d at 1377. Plaintiff does not make any such allegations—nor can he.

**5. Plaintiff Fails to State a Claim for Breach of Contract**

As a threshold matter, where a complaint fails to sufficiently identify the actual contract, express or implied, between the parties, or fails to set forth the breached terms, it is deficient and should be dismissed. *See Grady Mem'l Hosp. Corp. v. Hayes*, 341 Ga. App. 455, 457 (2017). Any implied contract, just like an express contract, "is not complete and enforceable until there is a meeting of the minds as to all essential terms . . . [A] petition must set forth a contract of such certainty and completeness that either party may have a right of action upon it." *Atlanta Metro Leasing, Inc. v. City of Atlanta*, 353 Ga. App. 785, 791 (2020). "[A]n implied contract only differs from an express contract in the mode of proof; both equally proceed upon the mutual agreement of the parties, and cannot exist without it." *Grange Mut. Cas. Co. v. Woodard*, 300 Ga. 848, 853 (2017).

Here, Plaintiff fails to sufficiently plead any contract—actual or implied—under which Plaintiff and Class Members are third-party beneficiaries. Plaintiff alleges that "Plaintiff and Class Members provided their information to hotels, including Marriott and Hilton, as a condition of receiving hospitality services," (Compl., ¶ 121), that the "hotels then contracted with Defendants to facilitate those reservations," (Compl., ¶ 122), "Defendants and each hotel established a contract," (*Id.*, ¶ 123), that "the contract was made *in part* to benefit Plaintiff and the Class," (*Id.*, ¶ 124) (emphasis added), and that "Defendants breached their contracts with those hotel partners when it [sic] failed to use reasonable cybersecurity measures to adequately protect Plaintiff's and Class Members' PII from unauthorized access or disclosure." *Id.*, ¶ 125. With such deficient allegations, Plaintiff's claim for breach of contract fails at the outset.

To maintain an action under a contract to which he was not a party, "it must *clearly appear* from the contract that it was intended for his benefit." *Haldi v. Piedmont Nephrology Assoc., P.C.*, 283 Ga. App. 321, 322-23, 641 S.E. 2d 298, 300 (2007) (emphasis added). "The mere fact that [a third party] would benefit from performance of the agreement is not alone sufficient. It must appear that both parties to the contract intended that the third person should be the beneficiary." *Id.* The few allegations Plaintiff does make about a purported contract are fatal to his claims: he alleges that the contracts between hotels and Otelier were "made *in part* to benefit Plaintiff and the Class." Compl., ¶ 124. In other words, it does *not* "clearly appear from the contract that it was intended for his benefit" and at best, according to Plaintiff's allegations, the hotel contracts incidentally benefited Plaintiff and did not intend for Plaintiff to be a beneficiary. Plaintiff is not a third-party beneficiary to any contract between Otelier and its hotel clients.

Courts routinely dismiss such claims in data breach actions because while consumers may benefit from services, "they are not intended third party beneficiaries." *Willingham v. Global*

*Payments, Inc.*, 2013 WL 440702, *20 (N.D. Ga. Feb. 5, 2013) (recommending dismissal of third-party beneficiary claim with prejudice); *see also Lone Star Nat. Bank, N.A. v. Heartland Bank*, Civil Action No. H-10-171, Order on Motion to Dismiss (S.D. Tex. March 31, 2011) (dismissing third-party beneficiary claim in data breach action); *Bruno v. Donohoe as Trustee of Tex. Med. Liability Trust*, 754 F. Supp. 3d 737, 749-50 (W.D. Tex. Oct. 25, 2024) (same).

Simply put, "unilateral statements of fact alleged as to the safety of customers' data do not create any contractual obligations." *In re Zappos.com, Inc.*, No. 3:12-cv-00325-RCJ, 2013 WL 4830497, at *3 (D. Nev. Sept. 9, 2013) (finding no implied contract to safeguard data).

## IV. CONCLUSION

For the reasons set forth herein, Defendants respectfully request that the Court grant their Motion to Dismiss and dismiss Plaintiff's Class Action Complaint in its entirety with prejudice.

Dated: July 14, 2025

Respectfully submitted,

**BAKER & HOSTETLER LLP**

*/s/ Georgia Bennett*
Georgia Bennett
Georgia Bar No. 495910
1170 Peachtree Street NE, Suite 2400
Atlanta, Georgia 30309
Telephone: 404.459.0050
Facsimile: 404.459.5734
gbennett@bakerlaw.com

Lisa A. Houssiere*
Texas Bar No. 24056950
811 Main Street, Suite 1100
Houston, Texas 77002
Telephone: 713.751.1600
Facsimile: 713.751.1717
lhoussiere@bakerlaw.com

Ambika B. Singhal*
Texas Bar No. 24132954
2850 North Harwood Street, Suite 1100
Dallas, Texas 75201
Telephone: 214.210.1200
Facsimile: 214.210.1201
asinghal@bakerlaw.com

*Attorneys for Defendants MyDigital Office Holdings, Inc. and MyDigitalOffice.com LLC*

**admitted pro hac vice*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 14th day of July 2025, a true and correct copy of the foregoing was filed with the Court's CM/ECF filing system, giving notice to all counsel of record.

*/s/ Georgia Bennett*
Georgia Bennett